UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT CHARLES COOK,

                Plaintiff,                Case No. 1:11-cv-637

v.                                      Honorable Robert Holmes Bell

UNKNOWN CASHLER et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Mussman, Caruso, Armstrong, Lane, Sergeant Booth, Workman, CO Walton, Lewis, Thompson, ARUS Booth, Berghuis, Inspector Walton, Fager, Pallas, Sturgon, Pierce, Byrd, Walls, Kennedy, Smith and Minnerick.  The Court will serve Plaintiff's retaliation claims against Defendants Cashler, McLellan, Jackson, Gibson, Watson, Sutherby, Galiton, Scrivens and Wakefield.

## Discussion

I.     Factual allegations

Plaintiff currently is incarcerated in the Chippewa Correctional Facility, but the events giving rise to his complaint occurred in 2007 and 2008, while he was incarcerated at the Brooks Correctional Facility (LRF).  In his *pro se* complaint, Plaintiff sues the following LRF staff: Warden Mary Berghuis; Deputy Warden Rick Smith; Assistant Deputy Warden Mark Sutherby; Resident Unit Officers (unknown) Cashler, (unknown) Wakefield, (unknown) Kennedy, (unknown) Gibson, (unknown) Mussman, (unknown) Sturgon, (unknown) Pierce, (unknown) Byrd and (unknown) Walls; Assistant Resident Unit Supervisors Pamela Watson, (unknown) Scrivens, D. Lewis and P. Booth;  Resident Unit Manager (unknown) Galiton; Resident Unit Manager/Litigation Coordinator J. Fager; Sergeants (unknown) Booth, (unknown) Workman and (unknown) Lane; Hearing Officers F. Jackson and D.J. Pallas; Hearing Investigator Gary McLlellan; Inspector (unknown) Walton; Grievance Coordinator J. Minnerick; Business Office Manager Linda Thompson; and Corrections Officer (unknown) Walton.[1]  Plaintiff also sues Michigan Department of Corrections (MDOC) Director Patricia Caruso and MDOC Step III Grievance Respondent J. Armstrong and various John Does.

Plaintiff's twenty-six-page complaint is divided into seventeen numbered parts, I through XVII, each with detailed factual allegations and legal claims.  The allegations set forth in the complaint, which concern the conditions of Plaintiff's confinement at LRF, occurred between

---

[1] Plaintiff names "Inspector" (unknown) Walton and "Corrections Officer" (unknown) Walton as Defendants in this action, but the complaint makes allegations only against Inspector Walton and "RUO" Walton.  For purposes of this opinion, this Court will assume that Corrections Officer Walton and RUO Walton are the same person.

October or November of 2007 and September 2008.  Additional facts will be provided below as necessary to address Plaintiff's claims.

I.      Statute of Limitations: Parts I & II

The events alleged in Parts I and II of Plaintiff's complaint took place from October or November 2007 through December 7, 2007.  Plaintiff alleges in Part I that in October or November of 2007, Defendant Wakefield threatened to retaliate and "get even" with Plaintiff for helping other inmates with legal problems.  (Compl., docket #1, Page ID#8.)  Within days after making the threat, Wakefield shook down Plaintiff's cell and seized a disk from his typewriter that contained legal information.  Plaintiff claims that Wakefield kept the disk and failed to issue a contraband removal record.  Wakefield allegedly told Plaintiff that he was going to search the disk for incriminating information.  According to Plaintiff, Wakefield asked Defendant Lewis to examine the disk on her computer, but she refused.  Wakefield told Plaintiff that he was the leader of the prison guard's union and would find another way to get even with Plaintiff.  Plaintiff contends that Wakefield's conduct violated his First Amendment right of access to the courts, his Fourth Amendment right against unreasonable search and seizure, his Fifth and Fourteenth Amendment due process rights, his Fourteenth Amendment equal protection rights and his Eighth Amendment right against cruel and unusual punishment.

Plaintiff alleges in Part II that on November 17, 2007, Defendant Gibson, in collusion with Defendants Wakefield and Cashler, ordered Defendant Mussman to retaliate against Plaintiff by shaking down his cell.  Mussman found one meat patty and one slice of roast beef in the window, which was in Plaintiff's cellmate's area of control.  Nevertheless, Gibson ordered Mussman to issue a major misconduct ticket against Plaintiff for theft.  Following a hearing on December 7, 2007,

Defendant Pallas found Plaintiff guilty of the lesser minor offense of unlawful possession. Gibson allegedly told Plaintiff the misconduct ticket was written in retaliation for Plaintiff helping other inmates file lawsuits against Defendant Wakefield and because Plaintiff associated with Muslim prisoners. Plaintiff reported the retaliation to Defendant Pallas, who allegedly warned Plaintiff to watch out for Wakefield and Cashler because they frequently wrote retaliatory misconduct tickets.

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2] Determining when a plaintiff should have known of his injury "is an objective standard based on an examination of the surrounding circumstances. . . . [A] plaintiff's cause of action accrues when, on the basis of objective facts, the plaintiff should have known of an injury, even if a subjective belief regarding the injury occurs at a later date." *Moll v. Abbott Labs*., 506 N.W.2d 816, 818 (Mich. 2002). In addition, Michigan law "compels strict adherence to the general rule that "subsequent damages do not give rise to a new cause of action. The discovery rule

_____

[2] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

applies to the discovery of an injury, not to the discovery of a later realized consequence of the injury." *Id.* (citing *Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1, 7 (Mich. 1986)).

The claims raised in Parts I and II are untimely. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued no later than December 7, 2007, the date upon which Plaintiff was convicted of the misconduct. The statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Under Michigan Department of Corrections Policy, the grievance process must be completed within 120 days unless an extension has been approved in writing by the grievance coordinator. MDOC Policy Directive 03.02.130 (eff. July 9, 2007). For purposes of this opinion, the Court will assume that Plaintiff's claims were grievable and give him the benefit of 120 days beyond December 7, 2007. Thus, the statute of limitations expired three years and 120 days later on April 6, 2011. Plaintiff filed his complaint on or about June 16, 2011, more than two months beyond Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based

upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See, e.g., Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002). Accordingly, the claims asserted in Parts I and II of the complaint must be dismissed as frivolous. Because Defendant Mussman is named only in Part II on the complaint, he also will be dismissed from this action.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'

– that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2));
*see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*
plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C.
§§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right
secured by the federal Constitution or laws and must show that the deprivation was committed by
a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.
Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal
rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify
the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Lack of factual allegations

Plaintiff does not make any factual allegations in his complaint about MDOC Director
Caruso, Step III Grievance Reviewer Armstrong, Sergeant Lane or Sergeant (unknown) Booth.  It
is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See
Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient
allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant
without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal
construction afforded to *pro se* complaints.  *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir.
2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity
which of the named defendants were personally involved in or responsible for each alleged violation
of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000)
(requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-

- 7 -

1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries").  Because Plaintiff fails to even mention Defendants Caruso, Armstrong, Sergeant (unknown) Booth and Lane in the body of his complaint, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent Plaintiff intended to sue Defendants Caruso, Armstrong, Sergeant (unknown) Booth and Lane by virtue of their supervisory positions or for the denial of his grievances or grievance appeals, he fails to state a claim.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendants Caruso,

- 8 -

Armstrong, Sergeant (unknown) Booth or Lane engaged in any active unconstitutional behavior. Accordingly, they will be dismissed from this action for failure to state a claim.

### B.    Part III

In Part III of the complaint, Plaintiff claims that on January 29, 2008, Defendant Cashler searched Plaintiff's cell and seized various items from his cellmate, Prisoner Van Zant's, area of control.  Cashler wrote a major misconduct ticket for theft against Plaintiff, but did not write one against Van Zant.  Following a hearing on February 15, 2008, Defendant Pallas found Plaintiff not guilty of the offense.  According to Plaintiff, Pallas acknowledged that the ticket was retaliatory and told Plaintiff to watch out for further retaliatory actions.  Plaintiff alleges that "Pallas verbally recognized [Plaintiff's] defense that this was a retaliatory ticket by Cashler because [he] was found not guilty in December, and that Cashler was retaliating against [Plaintiff] because [he] didn't subscribe to [Cashler's] racist or religious opinions."  (Compl., Page ID#10.)

To the extent Plaintiff contends that Cashler brought the misconduct charge in retaliation for Plaintiff's religious beliefs, the Court finds that Plaintiff's allegations are sufficient to state a claim.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Accordingly, the Court will serve Plaintiff's retaliation claim against Defendant Cashler.

### C.    Part IV

In Part IV of the complaint, Plaintiff alleges that on February 28, 2008, Defendant Cashler shook down his cell and seized a bag of cocoa and two bags of spices from Plaintiff's area, as well as two pounds of cheese from his cellmate, Prisoner Van Zant's, area of control.  Plaintiff contends that Hearing Officer Pallas previously determined at the February 15, 2008 misconduct hearing that the spices came from the prison store, and, thus, were not stolen.  Cashler wrote a major

- 9 -

misconduct against Plaintiff for theft, but did not charge Plaintiff's cellmate.  Defendant Gibson called Plaintiff to his office and told Plaintiff that they were going to get even with him and that Plaintiff would not beat the misconduct ticket because Van Zant was going to snitch on him. Plaintiff claims that Gibson and Cashler unsuccessfully attempted to instigate a fight between Plaintiff and Van Zant so they would be sent to segregation.  According to Plaintiff, Defendant McLlellan failed to properly investigate the misconduct ticket in order to protect his fellow officers. Plaintiff further alleges that McLlellan intentionally scheduled the misconduct hearing in front of Hearing Officer Jackson, rather than Hearing Officer Pallas, so that Plaintiff would be found guilty. Plaintiff contends that Jackson found Plaintiff not guilty with regard to the cheese, but guilty of stealing the cocoa and spices.

Plaintiff alleges that Defendants McLlellan, Jackson, Gibson, Cashler and Wakefield maliciously prosecuted him on false misconduct charges "in retaliation for blowing the whistle on Cashler for smuggling contraband into the prison, and for being a predatory homosexual predator . . . ."  (Compl. 5, Page ID#12.)  Plaintiff further claims that Defendants violated the Double Jeopardy Clause by "trying" him for a second time for possessing the cocoa and spices.

As an initial matter, Plaintiff fails to make any specific factual allegations against Defendant Wakefield with regard to the February 28, 2008 cell search and subsequent misconduct proceedings.  As previously discussed, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Frazier,*

- 10 -

41 F. App'x at 764.  Accordingly, Plaintiff fails to state a claim against Defendant Wakefield in Part IV of the complaint.

Plaintiff's assertion that Cashler brought a false major misconduct charge against fails to state a due process claim because Plaintiff does not have a liberty interest at stake.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct conviction resulted in any loss of good-time credits, nor could he.  The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted for crimes occurring

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

- 11 -

after April 1, 1987.  In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence.  Rather, it merely affects parole eligibility, which remains discretionary with the parole board.  481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement.  355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011).  In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails.  *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Plaintiff has not identified any significant deprivation arising from his conviction.  Consequently, his due process claim against Defendants arising from the misconduct conviction fail to state a claim upon which relief may be granted.

Moreover, Plaintiff fails to state a claim under the Double Jeopardy Clause for allegedly being punished a second time for possessing the cocoa and spices.  "Every circuit court of

- 12 -

appeals to consider this question has given the same answer:  The Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct."  *U.S. v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008).

At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of his retaliation claim against Defendants McLlellan, Jackson,[4] Gibson and Cashler.  *See Thaddeus-X*, 175 F.3d at 394.

Consequently, the Court will dismiss Part IV for failure to state a claim with the exception of Plaintiff's retaliation claim against Defendants McLlellan, Jackson, Gibson and Cashler.

## D.    Parts V-VI

Plaintiff alleges in Part V that after Defendant Cashler was transferred to his housing unit in October 2007, Cashler began harassing inmates that he saw associating with Plaintiff in order to instigate conflicts.  Cashler also started developing a relationship with Plaintiff's cellmate, Prisoner Van Zant.  In February and April, 2008, Plaintiff filed grievances against Cashler for borrowing books from Van Zant and allowing Van Zant to possess contraband items.  Plaintiff also accused Cashler of smuggling contraband items into the prison for Van Zant.  Defendant Workman was assigned to investigate Plaintiff's grievance.  According to Plaintiff, Workman offered him a "settlement agreement" whereby Workman would stop Cashler and all other staff from harassing

---

[4]Defendant Jackson is entitled to absolute judicial immunity for actions taken in his capacity as a hearing officer. *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988);.*Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007). Plaintiff, therefore, may not maintain an action for monetary damages against Jackson.

Plaintiff if Plaintiff agreed not to file a lawsuit.  Cashler told Plaintiff that he agreed to the settlement and would stop the harassment.

However, on April 22, 2008, Workman allegedly violated the settlement agreement by writing a false report in response to Plaintiff's grievance.  Plaintiff claims that Defendants Berghuis and Minnerick further violated the settlement agreement by writing a minor misconduct against Plaintiff for making a false accusation in his grievance that Cashler borrowed books from Van Zant.  Cashler told Plaintiff that he did not know why Minnerick wrote the misconduct because Cashler admitted to Minnerick that he borrowed books from Van Zant.  Workman also told Plaintiff that he talked to Minnerick about the settlement agreement and expected the charge to be dismissed.  Nevertheless, Defendant ARUS Booth found Plaintiff guilty of the offense and sentenced him to three days of top lock following an administrative hearing on May 5, 2008.  Plaintiff claims that Defendant Sutherby joined in the conspiracy to violate his civil rights by denying Plaintiff's appeal of the minor misconduct conviction.

A minor misconduct conviction does not implicate the Due Process Clause.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 486-87.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th

- 14 -

Cir. Aug. 12, 1999).  Plaintiff, therefore, fails to state a due process claim against Defendants arising from the minor misconduct charge.

        Plaintiff also contends that Defendants conspired to violate his civil rights.  To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987);  *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996).  A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right.  *Lepley v. Dresser*, 681 F. Supp. 418, 422 (W.D. Mich. 1988).  "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996).  A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy.  *Birrell v. Michigan,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

        Plaintiff's allegations of conspiracy are conclusory and speculative.  Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them.  He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various

circumstances with which he disagreed.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made."  *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior."  *Iqbal*, 129 S. Ct. at 1250.  In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

Accordingly, the Court will dismiss Parts V and VI of the complaint for failure to state a claim.  Because Defendants Workman is named only in Part V of the complaint, he also will be dismissed from this action.

### E.    Part VII

Plaintiff alleges in Part VII of the complaint that Defendant Cashler went on a "crime spree" on May 31 and June 1, 2008.  When Plaintiff went to chow on June 1, Cashler entered Plaintiff's cell pretending to conduct a shakedown, but instead read Plaintiff's legal file on him and went berserk.  After Plaintiff returned from Chow, RUOs Walton and Rodderick[5] called him aside and allegedly told him that Cashler went crazy after shaking down Plaintiff's cell and was running around the unit destroying inmates' property.  Walton told Plaintiff that Cashler was committing a felony by reading prisoners' legal mail and that she had reported Cashler's behavior to the Control Center.

---

[5] RUO Rodderick is not named as a Defendant in this action.

- 16 -

After a failed attempt to instigate a fight between Plaintiff and inmate Johnson, Cashler ordered Plaintiff to do a mock pack-up of his personal property.  Plaintiff claims that he packed everything required by policy.  Plaintiff put his state-issued linen, towels and blanket on top even though they are not required to be packed.  Plaintiff alleges that out of retaliation, spite and in order to belittle Plaintiff in front of his unit, Cashler then ordered Plaintiff to unpack and re-pack his property a second time with his state-issued linens on the bottom.  Plaintiff refused the order because he already had demonstrated that all of his property fit in the duffel bag and, while he was not required by policy to include his linens, they fit in the top of his bag.  After Plaintiff refused Cashler's direct orders to unpack and re-pack his property, Cashler wrote major misconducts against him for disobeying a direct order (DDO) and a major misconduct for theft.

Plaintiff filed a grievance against Cashler for his two-day crime spree.  Defendant Sutherby was assigned to investigate the grievance.  Plaintiff alleges that Sutherby interviewed over thirty witnesses in Defendant Lewis' office.  Plaintiff further claims that Defendant McLlellan acknowledged that Cashler wrote the misconducts out of retaliation and after consulting with Sutherby, told Plaintiff that he was reducing the theft and DDO tickets to a minor misconduct. While Plaintiff's allegations are difficult to follow, it appears that Sutherby found Plaintiff not guilty of a minor misconduct on the theft ticket, but sent the DDO forward for a major misconduct hearing. Following an administrative hearing, Pallas found Plaintiff guilty of the major misconduct for DDO.

Plaintiff's only allegations against RUO Walton are that Walton allegedly informed Plaintiff of Cashler's improper conduct and reported Cashler's behavior to the Control Center. Plaintiff does not allege how RUO Walton's conduct violated his federal rights and this Court cannot discern any federal claim arising from his allegations against Walton.  Because Plaintiff fails to

- 17 -

allege that RUO Walton engaged in active unconstitutional behavior, he fails to state a claim against her.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899.

   As thoroughly discussed in Sections II(C) and (D) and of this Opinion, Plaintiff has no liberty interest arising from the alleged major and minor misconduct convictions.  Accordingly, he fails to state a due process claim against Defendants arising from the misconduct convictions.

   Plaintiff's allegations suggest that Cashler ordered him to pack up his property and wrote major misconduct tickets against him in retaliation for Plaintiff's actual or planned litigation against Cashler.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X*, 175 F.3d at 394.  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

   Assuming Plaintiff satisfies the first requirement for a retaliation claim against Defendant Cashler, the Court finds that ordering Plaintiff to pack-up his property, while perhaps irritating, would not deter a person of ordinary firmness from engaging in protected conduct.  Accordingly, Plaintiff fails to state a retaliation claim arising from Cashler's orders to pack-up his property.  However, at this stage of the proceedings, the Court will order service of Plaintiff's retaliation claim arising from the misconduct charges.

Therefore, the Court will dismiss Part VII of the complaint, with the exception of Plaintiff's retaliation claim against Defendant Cashler arising from the major misconduct charges. Because Plaintiff fails to state a claim against Defendant RUO Walton and does not make any further allegations against him in the complaint, RUO Walton will be dismissed from this action.

**F.     Part VIII**

In Part VIII of the complaint, Plaintiff contends that Defendant ARUS Lewis abandoned her fiduciary duty when she failed to write Defendant Cashler up on disciplinary charges for violating policy and Petitioner's constitutional rights. As discussed above, a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of respondeat superior or the failure to act. *Iqbal,* 129 S. Ct. at 1948 (2009); *Shehee*, 199 F.3d at 300. Plaintiff does not allege that Lewis engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

Consequently, the Court will dismiss Part VIII of the complaint. Because the Court finds that all of Plaintiff's claims against Defendant Lewis in Parts VII and VIII of the complaint fail to state a claim and Plaintiff does not make any further allegations against her, Lewis will be dismissed from this action.

**G.     Part IX**

Plaintiff alleges in Part IX of the complaint that he was reclassified to segregation on June 27, 2008, allegedly because of his June 20, 2008 misconduct conviction for DDO. Plaintiff contends that the hearing officer only sentenced him to three days' loss of privileges for the offense, but Defendant Sutherby manipulated Defendant Watson into falsifying a security classification screen review that resulted in Plaintiff being re-classified to Level IV. As a result of the higher

- 19 -

security classification, Plaintiff claims that he suffered the loss of his job, reduction of personal property, theft of his property, reduction of out-of-cell time and privileges, more restrictive access to the courts, etc.  Plaintiff alleges that "[a]fter manipulating A.R.U.S. Watson, Sutherby and R.U.M. Galiton called [Plaintiff] to the control center and told R.U.M. McAllister[6] to tell [Plaintiff] it was for [his] grievance."  (Compl., Page ID#24.)  Plaintiff claims that Sutherby berated him for filing grievances against his officers and warned Plaintiff "that if [he] wanted to keep playing this game with him and his officers, that it was going to become very expensive . . . ."  (Compl., Page ID#25.)

Plaintiff further alleges that he received a copy of an "Order to Remit Prisoner Funds for Fines, Costs and Assessment," and was notified that Defendant Sutherby had Defendant Thompson in the accounting office steal $210.00 from his prisoner account to pay alleged parking tickets.  Plaintiff contends that the court order was for another prisoner, Michael Carter Cook #185185, but Defendants crossed out his prisoner number and inserted Plaintiff's number.  According to Plaintiff, "it was a deliberate and calculated plan, scheme, and criminal act to steal my money and retaliate against me . . . ."  (Compl., Page ID#25.)

Plaintiff fails to state a due process claim arising from his reclassification to Level IV.[7]  The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the

---

[6]RUM McAllister is not named as a Defendant in the complaint.

[7]In the MDOC, security classifications, from least to most secure, are as follows: Community Status, Levels I, II, III, IV, V, and segregation.  MICH. DEP'T OF CORR., Policy Directive 05.01.130 ¶ B (eff. Dec. 31, 2007).

MDOC's regulations created a liberty interest that he receive notice and a hearing before being placed in administrative segregation.  The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life.  *Id*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  The conditions of Plaintiff's confinement at Level IV, which is a lower security classification than administrative segregation, clearly do not constitute atypical and significant hardship within the context of his prison life.

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges.  *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).   Because Plaintiff does not have a constitutional right to be held at a particular security level or classification, he fails to state a claim.

- 21 -

Plaintiff's due process claim arising from the alleged theft of money from his prisoner account by Defendants Sutherby and Thompson is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ B (effective Nov. 15, 2004).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; Policy Directive 04.07.112 ¶ B.  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards,

institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff fails to state a due process claim arising from the funds removed from his prisoner account.

At this state of the proceedings, the Court finds that Plaintiff's allegations that Defendants Watson, Sutherby and Galiton raised his security level in retaliation for his grievance are sufficient to warrant service. *See Thaddeus-X*, 175 F.3d at 394.

Accordingly, the Court will dismiss Part IX of the complaint with the exception of Plaintiff's retaliation claim against Defendants Watson, Sutherby and Galiton.  Because the Court concluded that Plaintiff failed to state a due process claim against Defendant Thompson and Plaintiff does not make any further allegations against him in the complaint, Thompson will be dismissed from this action.

### H.    Part X

Plaintiff claims that in April 2008, Defendant Cashler wrote two retaliatory minor misconduct tickets against him for being temporarily out of place.  Plaintiff was found guilty by Defendant ARUS Booth.  Plaintiff asserts that Defendant ARUS Booth refused to question Plaintiff's witnesses, who would have testified that Cashler was retaliating against Plaintiff for being acquitted of theft tickets.  Plaintiff contends that Cashler began writing false minor misconduct reports against him, rather than major misconduct reports, because the prison staff who conducted the minor misconduct hearings would find Plaintiff guilty.

To the extent Plaintiff asserts that Cashler and ARUS Booth violated the Due Process Clause, he fails to state a claim. As discussed in Section II(D) of this Opinion, Plaintiff does not have a liberty interest in the minor misconduct proceedings because misconduct convictions that do not result in the loss of good time and do not constitute atypical and significant deprivations. *See Jewell*, 94 F. App'x at 273; *Carter*, 69 F. App'x at 680.

Plaintiff also contends that Defendant Cashler wrote the minor misconduct tickets in retaliation for Plaintiff's being found not guilty of the theft charges previously brought by Cashler against Plaintiff. At this stage of the proceedings, the Court finds Plaintiff's allegations sufficient to warrant service of the retaliation claim against Defendant Cashler. *See Thaddeus-X*, 175 F.3d at 394.

Consequently, the Court will dismiss Part X of the complaint, except for Plaintiff's retaliation claim against Cashler. Because the Court finds that all of Plaintiff's claims against Defendant ARUS Booth in Parts VI and X of the complaint fail to state a claim and Plaintiff does not make any further allegations against ARUS Booth, he will be dismissed from this action.

## I.      Part XI

Plaintiff alleges in Part XI of the complaint that Defendant Hearing Investigator McLlellan and ADW Sutherby violated his due process and equal protection rights by conducting a major disciplinary hearing on the June 1, 2008 DDO ticket and the June 4, 2008 theft ticket, written by RUO Cashler.      Grievance Coordinator Minnerick failed to intervene or attempt to stop their alleged unconstitutional conduct and responded to Plaintiff's request for the file on the June theft ticket by advising him that McLlellan violated policy by pulling the ticket without filing a report or

- 24 -

asking the warden's permission.  Plaintiff further claims that Deputy Warden Smith and Warden Berghuis joined Minnerick in covering up the crimes committed by RUO Cashler.

As thoroughly discussed in Sections II(C) of this Opinion, Plaintiff has no liberty interest arising from the alleged major misconduct proceedings.  Accordingly, he fails to state a due process claim against Defendants McLlellan and Sutherby.

Moreover, while Plaintiff generally asserts a violation of his equal protection rights, he fails to make any factual allegations whatsoever in support of his claim.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff's equal protection claim will be dismissed.

Plaintiff's claims against Defendants Minnerick, Smith and Berghuis are based upon the denial of a grievance and/or the failure to act.  As discussed in Part II(A) of this Opinion, liability under § 1983 may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee*, 199 F.3d at 300. A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899.  Plaintiff does not allege that Defendants Minnerick, Smith and Berghuis actively engaged in unconstitutional behavior.  Accordingly, Plaintiff fails to state a claim against them.

In light of the foregoing, the Court will dismiss Part XI of the complaint.  Because Plaintiff failed to state a claim against Defendant Berghuis in Parts VI and XI of the complaint and there are no further allegations against her, Berghuis will be dismissed from the complaint.

- 25 -

### J.        Part XII

Plaintiff alleges that Defendant Scrivens retaliated and discriminated against him by failing to correct the reclassification screen conducted by Defendants Watson and Sutherby.  He also claims that Scrivens retaliated against him by moving him to a cell with a mentally ill prisoner who refused to take his medication.  Plaintiff further alleges, "Scrivens also moved me because my black bunkie complained that I smoked.  Instead of moving him to a non-smoking wing, Scrivens moved me because I'm white and she's black."  (Compl., Page ID#21.)  Plaintiff claims that Scrivens was angry at him because he asked her to witness that he mailed a grievance to Defendant Inspector Walton.  The following day, Inspector Walton allegedly admonished Scrivens for being a witness for Plaintiff because Walton was not going to investigate the grievance.  When Plaintiff filed a grievance against Inspector Walton, Scrivens told Plaintiff that Inspector Walton was her mother and that she was going to get back at Plaintiff for filing the grievance against Walton by putting Plaintiff in a cell with the mentally ill prisoner.  Plaintiff  contends that Scrivens and Walton's mother-daughter relationship was a "conflict of interest" that resulted in the violation of his constitutional rights.

To the extent Plaintiff claims that Scrivens failed to correct the classification screening, he fails to state a claim.  As previously discussed, the mere failure to act is not actionable under 1983.  See *Grinter,* 532 F.3d 5at 575; *Greene*, 310 F.3d at 899.  Moreover, the Court held above that Plaintiff fails to state a due process claim arising from his security classification because the resulting restraint does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.

- 26 -

Likewise, Inspector Walton's alleged refusal to investigate Plaintiff's grievance fails to state a due process claim. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Inspector Walton's alleged conduct did not deprive him of due process.

Plaintiff also alleges that Scrivens moved him to a cell with a mentally prisoner because he's white and she's black. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Plaintiff's allegations on this point are wholly conclusory. Plaintiff provides no specific factual allegations whatsoever to support his contention that Scrivens' actions were the result of racial discrimination. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555. Moreover, Plaintiff admits that his cellmate complained about Plaintiff smoking in their

cell, which is an entirely plausible, non-discriminatory reason to move Plaintiff to another cell. Plaintiff, therefore, fails to state an equal protection claim against Scrivens.

The fact that Scrivens and Walton are mother and daughter, standing alone, does not implicate Plaintiff's federally protected rights. However, Plaintiff's allegations that Scrivens retaliated against him for writing grievance against her mother by placing him in cell with a mentally ill prisoner is sufficient to state a claim at this stage of the proceedings. *See Thaddeus-X*, 175 F.3d at 394.

Accordingly, the Court will dismiss the claim raised in Part XII with the exception of Plaintiff's retaliation claim against Defendant Scrivens. Defendant Inspector Walton also will be dismissed because Plaintiff failed to state a claim against her and Plaintiff does not make any further allegations against her in the complaint.

## K.    Part XIII

In Part XIII of the complaint, Plaintiff claims that Defendant Fager was assigned to investigate a grievance that Plaintiff wrote against Defendants Sutherby and Watson for falsifying a security reclassification that resulted in Plaintiff's placement in administrative segregation. Plaintiff alleges that Fager failed to properly investigate his grievance and lied in the grievance response in order to protect his co-workers and superiors. In addition, Plaintiff contends that Fager had a conflict of interest and should not have been assigned to investigate grievances because he also was the facility litigation coordinator.

Plaintiff fails to state a due process claim against Fager arising from the prison grievance process. As discussed above, there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker,* 128 F. App'x at 445. Because Plaintiff has no

liberty interest in the grievance process, Defendant Fager's alleged conduct did not deprive Plaintiff of due process.

Consequently, the Court will dismiss Part XIII of the complaint.  Defendant Fager also will be dismissed because he is named only in Part XIII.

### L.    Part XIV

In Part XIV, Plaintiff claims that on August 15, 2008, Plaintiff refused to lock with Prisoner Wilson and was moved to another unit.  Two days later, Plaintiff received a major misconduct report for disobeying a direct order for refusing to return to the cell he shared with Wilson.  Plaintiff alleges that Defendant McLlellan refused to properly investigate the charge and intentionally scheduled the hearing in front of Defendant Jackson, instead of Defendant Pallas.  He further claims that McLlellan pursued the misconduct charge even though it suffered from various procedural defects that should have caused the hearings division to lose jurisdiction to conduct a hearing.

The Court found in Section II(C) of this Opinion that Plaintiff cannot state a due process claim arising from major misconduct proceedings.  Accordingly, the Court will dismiss Part XIV of the complaint.  Because Plaintiff fails to state a claim against Defendant Pallas in Parts III, VII, and XIV of the complaint and Plaintiff fails to make any further allegations against him, Pallas will be dismissed from this action.

### M.    Parts XV-XVI

Plaintiff alleges in Part XV that Defendant Wakefield ordered Defendants Sturgon, Pierce, Byrd and Walls to conduct seven retaliatory shakedowns of Plaintiff's cell over a two week period beginning on September 7, 2008.  He further claims in Part XVI Plaintiff claims that

following his grievance against Wakefield for the retaliatory shakedowns, Defendant Smith came
to Plaintiff's housing unit to discuss his placement.  Smith mentioned that Wakefield's retaliatory
conduct would end if Plaintiff was reclassified from Level IV to Level II.  According to Plaintiff,
Wakefield admitted to Smith that everything Plaintiff said was true and Wakefield's conduct was
the result of Plaintiff helping another inmate with a lawsuit against him.  Plaintiff contends that
Wakefield demanded that Plaintiff be transferred to another facility rather than returned to Level II.
Plaintiff alleges that "Defendant Smith retaliatory transferred me, knowing that Union leader
Wakefield's guards would rob/steal/deliberately destroy my property on his behalf." (Compl., Page
ID#32.)  Plaintiff alleges that RUO Kennedy deliberately smashed Plaintiff's typewriter after
Plaintiff turned it in to be transferred with him.

   To the extent Plaintiff asserts a due process claim arising from the destruction of his
typewriter, it barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981).  A person deprived
of property by a "random and unauthorized act" of a state employee has no federal due process claim
unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation
remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S.
at 537.  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he
must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland*, 57 F.3d at
479-80.  Plaintiff cannot meet this burden because Michigan provides adequate post-deprivation
remedies for deprivation of property.  *Id.* at 480.  Plaintiff does not allege any reason why a state-
court action would not afford him complete relief for the deprivation of his personal property.
Accordingly, he fails to state a due process claim.

- 30 -

Plaintiff also fails to state a due process claim arising from his transfer to another facility, as opposed to being reclassified to a lower security level at the same facility.  As discussed above, a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *Rimmer-Bey,* 62 F.3d at 790-91.  Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification.  *See Olim*, 461 U.S. at 245; *Moody*, 429 U.S. at 88 n.9; *Meachum v. Fano*, 427 U.S. at 228-29.  Because Plaintiff does not have a constitutional right to be held at a particular facility or security level, he fails to state a due process claim.

Plaintiff also asserts retaliation claims against Defendant Wakefield, Sturgon, Pierce, Byrd, Walls and Smith. At this stage of the proceedings, the Court finds that Plaintiff's retaliation claim against Defendant Wakefield is sufficient to state a claim.  *See Thaddeus-X*, 175 F.3d at 394.  However, Plaintiff fails to state a retaliation claim against Defendants Sturgon, Pierce, Byrd, Walls and Smith because he does not allege that the exercise of the protected right was a substantial or motivating factor in their alleged retaliatory conduct.  *See Smith*, 250 F.3d at 1037.  Plaintiff alleges only that Defendants Sturgon, Pierce, Byrd and Walls searched his cell upon orders from Defendant Wakefield.  Plaintiff does not assert that Sturgon, Pierce, Byrd and Walls were aware of Wakefield's retaliatory animus or were motivated to search Plaintiff's cell for any reason other than following the orders of their superior.  Plaintiff, therefore, fails to state a retaliation claim against Defendants Sturgon, Pierce, Byrd, Walls and Smith.

Plaintiff makes nothing more than a conclusory allegation that Defendant Smith transferred him to another facility in retaliation for protected conduct.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening).  While Plaintiff alleges that Defendant Wakefield's conduct was the result of Plaintiff helping other inmates with a lawsuit against him, Plaintiff does not allege any facts showing that his legal activities were a substantial or motivating factor in Smith's decision to transfer Plaintiff to another facility.  *See Smith*, 250 F.3d at 1037.  Consequently, Plaintiff fails to state a retaliation claim against Defendant Smith.

Accordingly, the Court will dismiss Parts XV and XVI for failure to state a claim with the exception of Plaintiff's retaliation claim against Defendant Wakefield.  Defendants Sturgon, Pierce, Byrd and Walls will be dismissed from the action because they are named only in Part XV.  Defendant Kennedy also will be dismissed because he is named only in Part XVI.  In addition, the Court will dismiss Defendant Smith because Plaintiff failed to state a claim against Defendant Smith in Parts XI and XVI of the complaint and Plaintiff does not make any further allegations against him.

- 32 -

## N.        Part XVII

In Part XVII, Plaintiff claims that Defendants McLlellan and Minnerick violated his right of access to the courts, right to an effective grievance process and right against cruel and unusual punishment by denying his copies of records and files related to his grievances and misconduct proceedings.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)). In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. Plaintiff does not specifically allege how Defendants' failure to provide him with copies of his grievances and records related to his misconduct proceedings caused actual injury to pending or contemplated litigation. Accordingly, he fails to state an access to the courts claim.

As previously discussed, there is no constitutionally protected due process right to an effective prison grievance procedure. *See Walker,* 128 F. App'x at 445. Plaintiff, therefore, fails to state a due process claim against Defendants McLlellan and Minnerick.

Plaintiff also fails to state an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Defendants' alleged failure to provide Plaintiff with copies clearly is not the type of deprivation that would constitute an Eighth Amendment violation.

Consequently, the Court will dismiss Part XVII of the complaint. Because Plaintiff fails to state a claim against Defendant Minnerick in Parts VI, XI and XVII of the complaint, he will dismissed from this action.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Mussman, Caruso, Armstrong, Lane, Sergeant Booth, Workman, CO Walton, Lewis, Thompson, ARUS Booth, Berghuis, Inspector Walton, Fager, Pallas, Sturgon,

- 34 -

Pierce, Byrd, Walls, Kennedy, Smith and Minnerick will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Parts I, II, V, VI, VIII, XI, XIII, XIV and XVII of the complaint will be dismissed in their entirety.  Parts III, IV, VII, IX, X, XII, XV, XVI of the complaint will be dismissed, except for Plaintiff's retaliation claims against Defendants Cashler (Parts III, IV, VII, X), McLellan (Part IV), Jackson (Part IV), Gibson (Part IV), Watson (Part IX), Sutherby (Part IX), Galiton (Part IX), Scrivens (Part XII) and Wakefield (Part XV).[8]

An Order consistent with this Opinion will be entered.


Dated: February 21, 2012                    /s/ Robert Holmes Bell
                                            ROBERT HOLMES BELL
                                            UNITED STATES DISTRICT JUDGE

---

[8]The Court lacks sufficient information at this time to assess Plaintiff's claims against the unknown John Doe Defendants.