UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ROBERT CHARLES COOK, # 128535,  )
                                       Plaintiff,  )    Case No. 1:11-cv-637

v.  )    Honorable Robert Holmes Bell

UNKNOWN CASHLER, et al.,  )    **REPORT AND RECOMMENDATION**

                                       Defendants.  )

---

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's claims arise from his confinement at the Brooks Correctional Facility (LRF) in 2008. The defendants are Resident Unit Officers Lance Cashler, Wade Wakefield, and Hershel Gibson, Hearing Investigator Gary McLellan, Hearing Officer Fritz Jackson, Assistant Resident Supervisors Pamela Watson and Jovina Scrivens, Assistant Deputy Warden Mark Sutherby, and Resident Unit Manager Sandra Galiton. Plaintiff alleges that major misconduct charges, minor misconduct charges, a security classification screen, a cell assignment, and cell searches at LRF all constituted "retaliation" in violation of his First Amendment rights:

- A major misconduct charge for theft filed against plaintiff on January 29, 2008, by Resident Unit Officer Cashler;

- A major misconduct charge for theft filed against plaintiff on February 28, 2008, by RUO Cashler, discussed with plaintiff by RUO Gibson, investigated by Investigator McLellan, and heard by Hearing Officer Jackson;

- Two minor misconduct charges against plaintiff for being "out of place" filed in April 2008, by RUO Cashler;

- Major misconduct charges for theft and disobeying a direct order filed against plaintiff on June 1, 2008, by RUO Cashler;

- A security classification screen conducted on June 20, 2008, by defendants Watson, Sutherby, and Galiton, which increased plaintiff's security classification level;

- Plaintiff's assignment by ARUS Scrivens to a cell with a mentally ill prisoner; and

- Seven cell searches ordered by RUO Wakefield during the period from September 7, 2008, through September 21, 2008.

Plaintiff sues all defendants in their individual and official capacities and seeks an award of damages and declaratory relief. His only remaining claim against Hearing Officer Jackson is a claim for declaratory relief.[1] (*See* docket # 7 at ID# 70).

The matter is before the court on motions for summary judgment by defendants Galiton, Gibson, Scrivens, Wakefield, and Watson (docket # 18), Sutherby (docket # 25), McLellan (docket # 35), and Cashler (docket # 37), a motion to dismiss by defendant Jackson (docket # 31), and four motions by plaintiff. (docket #s 39, 45, 50, 56). For the reasons set forth herein, I recommend that all plaintiff's motions (docket #s 39, 45, 50, 56) be denied. I further recommend that defendant Jackson's motion to dismiss (docket # 31) be granted and that plaintiff's claim for declaratory relief against Jackson be dismissed as moot. I further recommend that plaintiff's claims against defendant Wakefield be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A, 42 U.S.C. § 1997e(c) for failure to state a claim on which relief can be granted. I further recommend that defendants' motions for summary judgment (docket #s 18, 25, 35, 37) be granted and that all plaintiff's claims against the remaining defendants be dismissed with prejudice because plaintiff did not "properly exhaust" the claims asserted in this lawsuit.

---

[1] All other claims were dismissed on February 22, 2012. (docket #s 7, 8).

I.  **Plaintiff's Motions**

The matter is before the court on a series of motions by plaintiff. On July 23, 2012, plaintiff filed his brief in response to defendants' motions for summary judgment and motion to dismiss, which he gave the following caption:

> PLAINTIFF'S OBJECTIONS TO DEFENDANT'S [sic] MOTION[S] FOR SUMMARY JUDGMENT; AND PLAINTIFF'S COUNTER MOTION FOR SUMMARY JUDGMENT; AND MOTION TO DENY DEFENDANT JACKSON'S REQUEST FOR A DECLARATORY DECISION; AND MOTION TO WAIVE DEFENDANT JACKSON'S GRANT OF IMMUNITY FOR PERPETRATING A FRAUD UPON THE COURT.

(docket # 39 at ID# 332). Plaintiff's brief was docketed as a motion for summary judgment. (docket # 39). On October 29, 2012, plaintiff filed a "MOTION FOR DEFAULT, OR ALTERNATIVELY, JUDGMENT ON THE PLEADINGS" based on defendants' failure to file a response to his cross-motion for summary judgment. (docket # 45). On January 7, 2013, plaintiff filed a "MOTION FOR CONTEMPT PROCEEDINGS AND MOTION TO EXPEDITE HIS MOTION FOR A TEMPORARY RESTRAINING ORDER" based on the lack of a response to his cross-motion for summary judgment. (docket # 50). On February 11, 2013, plaintiff filed a "COUNTER MOTION TO MOTION FOR SUMMARY JUDGMENT." (docket # 56). All plaintiff's motions should be denied for lack of merit.

Plaintiff refers to his cross-motions for summary judgment as "counter motions" for summary judgment. (docket #s 39, 56). Plaintiff did not support his motions with evidence. A party with the burden of proof faces a "high hurdle" in establishing entitlement to summary judgment. *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). He must produce evidence so compelling that "no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

799 F.2d 254, 259 (6th Cir. 1986). As plaintiff has produced no evidence in support of his claims, his summary judgment motions are frivolous.

Plaintiff's motion for default or alternatively a judgment on the pleadings is frivolous. Plaintiff fails to recognize the difference between a motion and a pleading. *See* FED. R. CIV. P. 7. His cross-motions for summary judgment are not pleadings. *Id*. Defendants' decision to rely on the briefs and evidence they filed in support of their own motions for summary judgment and not to file a separate response to plaintiff's unsupported motions is not a basis for a default, default judgment, or judgment on the pleadings.

Plaintiff's motion for contempt proceedings and to expedite consideration of his motion for a temporary restraining order is equally frivolous. On January 15, 2013, Judge Bell denied plaintiff's motion for a preliminary injunction or temporary restraining order. (1/15/13 Mem. Op. & Order, docket # 54). Judge Bell found that plaintiff's arguments that defendants had "pleaded guilty" and "committed fraud on the court" were "nonsensical:"

> Plaintiff also argues that he had a strong likelihood of success on his retaliation claims. Plaintiff made no such showing in his motion. Moreover, plaintiff's support for this position in his objections is nonsensical. It consists of vague, unsupported allegations that the defendants have admitted to committing fraud on the Court and that the defendants have "pleaded guilty" by refusing to go to trial and by refusing to engage in discovery. (Dkt. No. 43, PageID # 376-78.) The defendants have not pleaded guilty and have not committed any fraud upon this Court.

(*Id.* at 3). Plaintiff persists in these frivolous assertions. (*See* docket #s 50, 55). His arguments remain "nonsensical."

Plaintiff asks the court to hold various non-parties in contempt based on his prolix description of events allegedly occurring in 2012 and 2013. (docket # 51 at ID#s 411-17). His statement of relief sought is instructive and is quoted verbatim below:

> This is 2013, the court should make history by placing Warden Jeffrey Woods, Warden (Unknown) Bauman, ARUS Jeff Clark, and RUO Payment, in contempt of court by fining them or imprisoning them, or both, for obstructing or interfering with the orderly administration of justice, or impairing the dignity of the court or disrespecting its authority, by opening plaintiff's mail, stealing his typewriter that contained evidence pending in this federal investigation and/or retaliatorily transferring him as punishment for filing this lawsuit, which Warden Bauman confessed to joining when she accepted plaintiff as punishment from URF.

(docket # 51, ID#s 418-19). Plaintiff cannot bypass the MDOC's grievance process and exponentially expand his claims in this case through the mere expedient of stating that a new list of individuals should be held in contempt. I find no basis for initiating contempt proceedings. *See M & C Corp. v. Erwin Behr GmbH & Co., KG*, No. 11-2167, 2012 WL 6554683, at * 3 (6th Cir. Dec. 17, 2012)(emphasizing the high burden of proof faced by a party seeking imposition of contempt sanctions against a non-party). Woods, Bauman, Clark, and Payment have never been parties to this lawsuit and have not violated the court's orders. I recommend that all plaintiff's motions be denied for lack of merit.

**II.    Motion to Dismiss by Defendant Jackson**

Hearing Officer Jackson seeks dismissal of plaintiff's remaining claim against him for declaratory relief on the ground that it is moot. Plaintiff's claim against Jackson is based on actions allegedly taken while plaintiff was an inmate at the Brooks Correctional Facility (LRF). Plaintiff is now an inmate at the Alger Correctional Facility (LMF). (*see* docket # 57). Plaintiff's claim for declaratory relief against defendant Jackson is moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff argues that the court should revisit its earlier decision and "waive defendant Jackson's grant of immunity for perpetrating a fraud on the court." (Plf. Brief at ID# 332, docket

# 39). Plaintiff argues that defendant's motion to dismiss "is a fraud on the Court because Jackson retired from the MDOC before Plaintiff transferred." (*Id.* at ID# 334). Assuming that Hearing Officer Jackson retired, it would not be a fraud on the court, but it would be an additional reason for dismissing plaintiff's claim for declaratory relief against Jackson as moot, as Jackson is no longer in any position to affect plaintiff's rights.

## III. Cell Searches Conducted in September 2008

Plaintiff alleges that defendant Wakefield authorized seven searches of his cell over a two-week period in September 2008, in retaliation for his exercise of First Amendment rights. (Compl. at 24-25, ID#s 31-32). The elements of a retaliation claim are well known: (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (*en banc*). Assuming for sake of argument that plaintiff engaged in protected activity, I nevertheless conclude that his claim against Wakefield fails to state grounds for relief, for lack of allegation of facts showing an "adverse action."

Cell searches are a routine necessity of prison life and are conducted for the safety of prisoners and prison employees. Thus, cell "shakedowns," without significantly more, are not actions that would deter a person of ordinary firmness. *Cf. Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002) (officers searching cell destroyed legal papers and confiscated medical items). "[W]hen a plaintiff's alleged adverse action is inconsequential, resulting in nothing more than a de minimis

injury, the claim is properly dismissed as a matter of law. Indeed, it trivializes the First Amendment to allow plaintiffs to bring claims for any adverse action, no matter how minor." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (internal quotation marks and citations omitted). Routine cell searches, even if frequent, would not deter a prisoner of ordinary firmness. Accordingly, I recommend that all plaintiff's claims against defendant Wakefield be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. ¶ 1997e(c) for failure to state claim on which relief can be granted.

## IV. Motions for Summary Judgment By All Remaining Defendants

### A. Summary Judgment Standards

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

      B.      <u>Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies</u>

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; Booth, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even

where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[2] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

---

[2]A copy of the policy directive is found in the record. *See* docket # 19-1, ID#s 141-47.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to

file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

    C.    <u>Proposed Findings of Fact</u>

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections serving a non-parolable life sentence for first-degree murder. He is currently an inmate at the Alger Correctional Facility. (LMF). This lawsuit arises from his incarceration at the Brooks Correctional Facility (LRF) in 2008.

Plaintiff filed and pursued the following LRF grievances through Step III decisions:

1. **LRF-08-09-1021-28a** (grievance filed on September 16, 2008, complaining that "illegal SCC hearings" were held on "06/27/08 & 9/03/08;" rejected at Step I because it was duplicative of earlier grievances, contained extraneous information, and raised multiple issues; upheld on those grounds at Steps II and III)(docket # 19-3);

2. **LRF-08-09-1043-28a** (grievance filed on September 22, 2008, asserting that on June 27, 2008, ADW Sutherby and RUM Galiton reclassified plaintiff to a higher security level because he filed a grievance against RUO Cashler; rejected at Step I because it was duplicative, contained extraneous information, raised multiple issues, was untimely, and plaintiff failed to attempt to resolve the matter with staff members before filing the grievance; upheld on those grounds at Steps II and III)(docket # 19-5);

3. **LRF-08-09-959-28e** (grievance filed on September 8, 2008, asserting that defendant McClellan failed to respond to an August 2, 2008 kite demanding the entire file on plaintiff's theft ticket dated November 17, 2007; rejected at Step I because it was untimely; upheld on that basis at Steps II and III)(docket # 19-6);

4. **LRF-08-09-1023-28a** (grievance filed on September 22, 2008, against ARUM Fager, ADW Sutherby and whoever assigned Fager to investigate Grievance No. LRF-08-09-00960-17i "for staff corruption by interfering with a Federal Investigation of RUO Wakefield[;]" rejected at Step I of the grievance process because it was duplicative,

an irresponsible use of the grievance form, and untimely; upheld on those grounds at Steps II and III)(docket # 19-7);

5. **LRF-08-09-1024-28a** (grievance filed on September 22, 2008, against Fager Sutherby complaining that Fager had been assigned to investigate an earlier grievance against Wakefield, that Sutherby's review of a grievance was retaliatory, and asking that Fager and Sutherby be prosecuted for obstruction of justice and fired; rejected at Step I because it was duplicative, an irresponsible use of the grievance form, and untimely; upheld on those grounds at Steps II and III )(docket # 19-8);

6. **LRF-08-09-0960-17i** (grievance filed on September 8, 2008, against Wakefield complaining that a September 7, 2008 search of plaintiff's cell by a "green tag" Officer Sturgeon had been ordered by Wakefield "out of retaliation[;]" the grievance was denied at Step I because the search had been a random search conducted by a trainee corrections officer who had not been acting under Wakefield's direction and it appeared that plaintiff was attempting to "manipulate a transfer and/or bring disciplinary action against Wakefield;" upheld on those grounds at Steps II and III)(docket # 19-9);

7. **LRF-08-08-0859-08a** (grievance filed on August 15, 2008, complaining plaintiff's security classification level had been raised on June 27, 2008, and that ARUS Scrivens had not "corrected" the reclassification; the Step I response indicated that the grievance was denied because his reclassification had been ordered by the SCC because plaintiff could not be safely managed as a security Level II prisoner; upheld on that basis at Steps II and III (docket # 19-10);

8. **LRF-08-08-880-27a** (grievance filed on August 14, 2008, against "hearing Investigator McLellan, ADW Sutherby, Deputy Warden Smith, and Warden Berghuis," complaining that on June 16, 2008, McClellan violated policy and procedure by "pulling" a major theft ticket without filing a written report and the others violated policy by allowing McClellan's actions; the grievance was denied at Step I because it was untimely; upheld on that basis at Steps II and III)(docket # 19-11);

9. **LRF-08-08-794-01b** (grievance filed on August 6, 2008, regarding charges to plaintiff's prisoner account; Step I response indicated that an error had occurred and the amount in question had been returned to plaintiff's account; upheld on that basis at Steps II and III)(docket # 19-12);

10. **LRF-08-05-475-12z** (grievance filed on May 12, 2008, complaining that plaintiff had been subjected to "inhuman treatment" because he had to use a "rusty" toenail clipper; denied at Step I because, if the toenail clippers were rusty, plaintiff did not

have to use them, and that the solution used to clean the clippers should not cause rust; upheld on those grounds at Steps II and III)(docket # 19-13);

11. **LRF-08-04-435-28e** (grievance filed on April 28, 2008, complaining that the major misconduct citation for theft written by Cashler on January 29, 2008, had been retaliatory; rejected at Step I because it was untimely; upheld on that basis at Steps II and III)(docket # 19-14);

12. **LRF-08-04-436-28e** (grievance filed on April 28, 2008, complaining that the major misconduct citation for theft written by Cashler on February 29, 2008, had been retaliatory; rejected at Step I because it was untimely; upheld on that basis at Steps II and III)(docket # 19-15)

13. **LRF-08-04-364-12z** (grievance filed on April 7, 2008, complaining that a $5 medical co-payment had erroneously been deducted from his prisoner account; denied at Step I because plaintiff owed the amount charged for medical services received; upheld on that basis at Steps II and III)(docket # 19-16);

14. **LRF-08-05-489-11b** (grievance filed on May 12, 2008, complaining that grievance coordinator Minnerick harassed and retaliated against him by writing a minor misconduct ticket; rejected at Step I for multiple reasons; upheld on those grounds at Steps II and III)(docket # 19-17);

15. **LRF-08-04-365-17i** (grievance filed on April 7, 2008, complaining that on January 23, 2008, defendant Cashler borrowed reading materials from plaintiff's roommate prisoner Van Zant; denied at Step I because no violation of policy had been shown, Cashler had issued major misconduct citations against plaintiff for theft and possession of stolen property and on March 17, 2008, plaintiff had been found guilty of those charges; upheld on that basis at Steps II and III)(docket # 19-18); and

16. **LRF-08-04-366-28a** (grievance filed on April 7, 2008, complaining that on January 27, 2008, defendant Cashler smuggled a "Jegs" magazine into the prison for plaintiff's roommate prisoner Van Zant; grievance denied at Step I because it was untimely, filed in violation of the grievance procedure, and duplicative; upheld on those grounds at Steps II and III)(docket # 19-19).

On June 16, 2011, plaintiff filed this lawsuit.

D.  Discussion

Defendants have raised the affirmative defense of failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. The facts summarized above clearly establish that plaintiff has not exhausted his remaining claims.

Plaintiff argues that defendants "waived and forfeited any rights they had to exhaustion" by entering into and violating "settlement agreements." (Plf. Brief at 3, ID# 341). There is no evidence that defendants entered into or violated any settlement agreements. Plaintiff has produced no agreement preventing defendants from asserting the affirmative defense provided by statute.

Plaintiff devotes a significant portion of his brief objecting to the enforcement of paragraph P of Policy Directive 03.02.130, under which he was required to "attempt to resolve the issue with staff member involved within two business days after becoming aware of the grievable issue." Plaintiff's arguments do nothing to advance his claims, because LRF-08-09-1043-28a was the only grievance rejected on this ground, and it was only one of the many grounds on which that grievance was rejected. Plaintiff argues that the requirement that he attempt to resolve the issue within two business days "is just another [rule] contrived to perpetrate a fraud on the court." (Plf. Brief at 4, docket # 39, ID# 342). Plaintiff is incorrect. This rule serves a number of legitimate interests. Among other things, it provides an opportunity to resolve issues at the earliest possible opportunity, helps define what the issues are, and prevents the assertion of stale claims. Exhaustion protects administrative authority and promotes efficiency. *See Woodford v. Ngo*, 548 U.S. at 89; *see also Jones v. Bock*, 549 U.S. at 204. "Because exhaustion requirements are designed to deal with

parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." *Woodford*, 548 U.S. at 90. Paragraph P serves legitimate interests and is not a contrivance for committing "fraud on the court." *See e.g.*, *Cook v. Caruso*, No. 09-10892, 2011 WL 768076, at * 2 (E.D. Mich. Feb. 28, 2011); *Crump v. Caruso*, No. 2:09-cv-194, 2010 WL 3720068, at * 3 (W.D. Mich. Sept. 17, 2010); *Sanders v. Bachus*, No. 1:07-cv-360, 2009 WL 4796739, at * 6 (W.D. Mich. Dec. 9, 2009).

Plaintiff attempts to evade the MDOC grievance process through the following one-sentence argument: "This entire case falls within the jurisdiction of the Internal Affairs Division, because of the felonies involved." (Plf. Brief at 3, ID# 342). Perfunctory arguments are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Coley v. Bagley*, No. 10-3469, __ F.3d __, 2013 WL 464677, at * 10 (6th Cir. Feb. 8, 2013). Assuming the issue had not been waived, it is patently meritless. If an issue falls within the jurisdiction of the Internal Affairs Division, the inmate is only excused from the requirement that he attempt to resolve the issue with the staff member involved. The inmate is not allowed to bypass the entire grievance process. *See* P.D. 03.02.130 at ¶¶ P, Q, V, ID#s 143-44.

Plaintiff argues that the MDOC's grievance process is "an exercise in futility." (Plf. Brief at 17, ID# 355). It is well established that assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Booth v. Churner*, 532 U.S. at 741 n. 6; *Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d at 309.

The evidence supporting a finding for defendants is compelling and unrebutted. Defendants have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

**Recommended Disposition**

For the foregoing reasons, I recommend that all plaintiff's motions (docket #s 39, 45, 50, 56) be denied. I further recommend that defendant Jackson's motion to dismiss (docket # 31) be granted and that plaintiff's claim for declaratory relief against Jackson be dismissed because it is moot. I further recommend that plaintiff's claims against defendant Wakefield be dismissed under 28 U.S.C. §§ 1915(e)(2), 1915A, 42 U.S.C. § 1997e(c) for failure to state a claim upon which relief can be granted. I further recommend that defendants' motions for summary judgment (docket #s 18, 25, 35, 37) be granted, and that all plaintiff's claims against defendants Galiton, Gibson, Scrivens, Watson, Sutherby, McLellan, and Cashler be dismissed with prejudice because plaintiff did not "properly exhaust" any claim against defendants.

Dated: March 3, 2013        /s/ Joseph G. Scoville
                            United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).